Good afternoon. We only have one case to hear this afternoon. Barnes v. Secretary of the Department of Corrections. Mr. Shakur, will you come speak with us, please? Good afternoon, my name is Ali Shakur. I'm here on behalf of the petitioner, James P. Barnes. I'd like to thank the Court's time for allowing oral argument on this case this afternoon. First of all, I would like to say that I'm asking this Court to reverse the district court's decision denying relief because Mr. Barnes' Sixth Amendment right to self-representation were violated due to the fact that special counsel was appointed in this case against his vigorous and continuous objections at the trial level. Now, Mr. Barnes elected to go pro se, and by doing so, the trial court initiated the proper procedures by asking him whether or not he was competent based on a query, you know, according to federal law and statute law. So Mr. Barnes was found competent to proceed. He was found competent to represent himself. So at that point, Mr. Barnes elected to proceed by pleading guilty to first-degree capital murder, essentially at arraignment. He waived his right to counsel. He waived his right to jury trial. He waived his right to a penalty phase advisory jury. And he elected to rely on the fact that he was coming forward to help the state solve a cold case that had not been solved since. Mr. Shakur, the thing that worries me about your position is I guess if the case had proceeded as you are advocating, there would have been no mitigation investigation and no mitigation presentation. Is that right? It's right, Your Honor, to the extent that there would not be substantial mitigation in the way that we usually ask for mitigation. Well, he didn't present any mitigation. Well, I would challenge that, Your Honor, just to the point where he was offering mitigation in the form of his coming forward. Well, in his view, he confessed, and that was mitigating. Right. But in terms of his background, his schooling records, his medical records, mental evaluation, all of that, nobody would ever know about it if the case proceeded the way you're advocating. Right? Well, Your Honor, the court would have a couple of different options. The court could forbid any information against Mr. Barnes' wishes regarding medical records, school records, mental health history, and things like that. Which in this case would have been zero. Exactly. Or this court could say that the trial court should just ask for a PSI, a pre-sentencing investigation. That's what they determined pursuant to Muhammad v. State at the Florida level. And that was required by state law, right? State law requires the preparation of a PSI if no mitigation is going to occur. So that PSI would have been done, and that PSI would have contained every bit and more of any possible aggravating information against your client without the benefit of a mitigation counsel who could have put that in the best light, correct? Well, Your Honor, I would state that a PSI, pre-sentencing investigative report, should be used strictly for mitigation purposes. It would be improper for a trial court to find any aggravating factors from the mitigation report. What difference would it make then? So if the PSI is prepared, then it would serve the same function as what counsel did? Well, Your Honor, to some extent. But a PSI would be, first of all, Mr. Barnes would have the opportunity to challenge the PSI if he found anything in there that he found to be objectionable, because that would be based on his right to confrontation. He'd have a right to challenge the PSI. But by calling Dr. Reevesane, who was an expert retained at trial by special counsel, I would say that it enhanced the aggravating factors of the PSI. By putting it in a certain context, special counsel, instead of putting it into a mitigation context, Dr. Reevesane testified extensively by calling Mr. Barnes a sociopath, a psychopath, basically saying he's irredeemable. Dr. Reevesane testified at trial that when Mr. Barnes was 2 years old, he broke into a mail truck and stole a card with a check inside of it. I mean, you're importing mens rea into a 2-year-old. Also, Dr. Reevesane testified that Mr. Barnes assaulted multiple family members. But all of those things, of course, and many more were in the PSI. My understanding of the doctor's testimony was to say, yes, what can you do? Those are the facts. But this is a man who was born with sort of an organic brain disorder. He couldn't really go that far because your client refused or because Mr. Barnes refused to have any sort of neurological testing. But to say this is a man who was born this way, this is a man who had cocaine dependency, this is a man whose home environment only accentuated those preexisting traits, my understanding was it was to show some mitigation, that he's not responsible for being the way he is. Is that not how you read the testimony? It could be read that way, Your Honor. But also, the information came out against Mr. Barnes' expressed wishes. We have Ferretta v. California. That is still good law. And based on that, Mr. Barnes has a right to proceed regarding how he wants to proceed regarding mitigation, how he wants to present his trial in his own way. The content, the organization, that's language from Ferretta v. California. That's language from McCaskill v. Wiggins. So I understand the tension here. I understand the fact that there's a wealth of so-called mitigating circumstances that wouldn't be brought forth before the court. But we still have Ferretta v. California as good law. And if an individual decides that he does not want this information put forth before the court, that should be that individual's right. Well, let's talk about our context in that this is a state death sentence, and our review is under the Anti-Terrorism and Effective Death Penalty Act. And I would take it that you would say the best case for your argument is the one that's not a state case but a federal death penalty prosecution and the one in the Fifth Circuit, the Davis decision, right, that concluded that the self-represented defendant had a right not to present mitigation. That was a leading question, by the way. No, but is that your best case? And if so, when I look at that, that's one that divided the Fifth Circuit panel. Judge Dennis wrote a really strong dissent. And we're supposed to give, we're supposed to defer to the state court's ruling if it's a reasonable, even if we would disagree, but a reasonable application of clearly established federal law. I look at how the Fifth Circuit was divided on this question in their federal case, and I'm wondering how could we say it's unreasonable to basically have concluded what Judge Dennis did in the Fifth Circuit, and in the circumstances that are distinguishable that the Florida Supreme Court brought up in this case. Well, Your Honor, the Fifth Circuit could be used as persuasive authority, but I would say we're still guided by Feretta and we're still guided by Wiggins v. McCaskill. In Wiggins v. McCaskill But neither of those decisions involved this kind of circumstance, right? Not exactly these circumstances, but in McCaskill v. Wiggins, the defendant did not prevail because standby counsel's role was de minimis. Standby counsel helped with procedural issues and more minor issues. And to the extent that the standby counsel in Wiggins v. McCaskill did argue motions and make objections, the defendant in that case acquiesced. It was kind of a hybrid representation. Well, do you agree with me that really the best case that you have for the notion that there is this Feretta right in this context is the Davis decision from the Fifth Circuit? Perhaps, Your Honor, but I would still rely more on Feretta and McCaskill, even though Davis might be more factually similar. And I understand that. Feretta itself says that the right is not absolute, right? And at least Davis says in a similar kind of context, although there are some important differences, the Florida Supreme Court brings up here. We can talk about that. But that's the closest case, right? That's probably the closest case, Your Honor. And I can see this is not an easy issue when we're dealing with the death penalty, the machinery of death. There's a tension between Feretta rights versus the need for individualized sentencing versus the need for the state not to be used as a mechanism for suicide. However, the right belongs to the defendant. In cases where we're talking about, like Wiggins v. Smith or even going all the way back to Greg, when we're talking about the need for researching mitigation and narrowing the class of defendants, we're trying to make sure that the defendant's rights are protected. Cases involving ineffective assistance of counsel, those cases were cited in the state's answer brief. And I would say that they're not on point because we're talking about those cases where appointed counsel is wanted by the defendant and that appointed counsel does not do a reasonable job pursuant to ABA guidelines or ethical guidelines. In this case, we're talking about a defendant who's not dealing with appointed counsel. He's saying, I know my own life story. I know my mitigation. I'm found competent to proceed and represent myself. And this is how I want to go forward. You know, when I look at even the Davis case, which divided that panel, and then I consider what the Florida Supreme Court said here about that, the Florida Supreme Court said, well, there you had a defendant who's pursuing a residual doubt theory, and to present mitigation really is in conflict with that. That's not true here where the defendant has confessed and is expressing remorse. Presenting mitigation is not in conflict with that. And moreover, in Davis, there was an advisory jury which could be confused about what would happen in the event of counsel presenting mitigation that conflicts with what the defendant wants. And here the defendant waived his right to an advisory jury. And I wonder whether that makes it even harder for you in this context to say that this is an unreasonable application of clearly established federal law. Well, Your Honor, to bring up your last point first, I would submit even though there's no advisory jury, the fact that Mr. Barnes is still cross-examining a so-called mitigation witness on the record is a clear violation of the Sixth Amendment rights. But when we're talking about what a jury might have heard or what a jury might witness, we're getting into maybe we're accidentally getting into a harmless error analysis. And as this Court is aware, pursuant to McCaskill v. Wiggins and pursuant to Strozier, which came out of this period of circuit, a harmless error analysis has no basis into an inquiry regarding whether or not somebody's Sixth Amendment rights is self-representation. It depends on what kind of Sixth Amendment right, whether it's structural error or not. But in terms of concluding, the Florida Supreme Court concluding that it does not violate the Sixth Amendment, that's what I'm focused on in that kind of context, whether that makes your argument harder. It may make it harder. If there's a jury here watching Mr. Barnes object repeatedly and at the end of the cross-examination, Dr. Reed saying, being so deflated that he's saying that I just, I give up. He says, Mr. Barnes is supposed to put on some more information. He's supposed to challenge some more testimony. And Mr. Barnes, according to the testimony that's before this Court in the record, I'm paraphrasing, stated that after what Dr. Reed was saying, he had to say, I really have nothing else to offer. The damage has been done. And Mr. Barnes was ultimately right. And even though a jury was not present, Mr. Barnes still has Sixth Amendment right to self-representation. You say the damage has been done, but based on that testimony, the Court was able to glean, I think, four different mitigators, extreme mental and emotional disturbance, prolonged drug use, no loving relationship with parents, sexual abuse as a child. Your client didn't want any of those to arise or to be considered as mitigation, but that was the net result of his testimony, was it not? That's true, Your Honor. And one of those was a statutory mitigator, the under the influence of extreme mental and emotional distress because of his cocaine dependence. And there were also several non-statutory mitigators. And all the aggravators would have been there whether we had this presentation or not, right? That is correct. But suppose Mr. Barnes had a trial attorney. A trial attorney might make a determination based on consulting with the defendant that we're not going to put this information on because of the double-edged sword. That's something I'm sure this Court has heard a lot of times. So even though something might be considered mitigating, so much damaging information could come out based on that. The trial attorney often makes a decision that I don't want to put that on, and the defendant agrees with it. Here Mr. Barnes, as his own counsel, had the right to make that decision that I don't want to put that information on. And here we had, as the language in Feretta is used, a legal fiction where Mr. Barnes had counsel when that counsel was really not representing Mr. Barnes's interests. And pursuant to McCaskill v. Wiggins, any decisions that conflict with what pro se counsel wants to do should be deferred to pro se counsel, the pro se defendant, I should say. And that wasn't happening in this case. If we're following Feretta to the law, if we're following McCaskill v. Wiggins to the letter of the law, once Mr. Barnes told special counsel and standby counsel, I don't want to do X, Y, and Z, his wishes should have been upheld. I know I'm well into my rebuttal. No, you're good. You had five minutes to go, but you can end now if you like. Oh, okay. I'm sorry, I got confused. That's okay. You're fine. Do you have any further questions? Well, you know, I guess it just, I mean, the trial judge was in a tough place. I mean, and again, I come back to, you know, the hard job you have to do today. I mean, if this went according to your statement of how you think the case should have been handled, we would have a judge without a jury making a decision about whether to sentence Mr. Barnes to death or not without having done any mitigation investigation. I mean, that can't be a good rule, can it? I understand, Your Honor. It would look problematic. However, Mr. Barnes is still an individual, and the judge still does not have to sentence him to death without the jury. As an individual, we're dealing with individualized sentencing. If an individual decides I don't want certain parts of my background investigated or to the extent they are investigated, I don't want that put on the record for the court's consideration, I would submit that that should be considered because of Ferretta. I mean, if we didn't have, if Ferretta was overruled. Tell me this. What if you brought up the pre-sentence investigation report? What if the court, instead of employing an attorney, just had a court officer, like a probation and pretrial officer, prepare a report that had had the same kind of information? Well, Your Honor, in that case, I would submit that Mr. Barnes would have the right to challenge anything that he found to be aggravating or inaccurate. Well, he has that right when the mitigating evidence is presented by the court-appointed counsel, too. Right, but court-appointed counsel presenting mitigating evidence on the behalf of somebody that doesn't want it, I would say is a legal fiction. Well, it may be, but my point is the court appointed this counsel because the court felt that the court needed this information to perform its duty, okay? And you can call it legal fiction to say he's really representing the defendant who doesn't want him. My point is, in a real sense, it seems to me the lawyer is performing a function for the court that a court officer might have performed as well. And if a court officer, as opposed to an attorney, had done it and yielded the same exact information, you wouldn't have a Sixth Amendment argument, would you? Maybe. It may still be a Sixth Amendment argument. How would that be? Because in this case, we have a special counsel doing it. We have an attorney doing it. So if the court appointed somebody to put forth information on behalf of the defendant that's considered possibly mitigating, the defendant should still have the opportunity to challenge it, if not override it. What if it's inaccurate? What if some of that information is not only aggravating to Mr. Barnes' opinion? What if it's inaccurate? So I would submit even if a court personnel, to the extent that that could happen, or the court just asked for a PSI report and relied on its own behalf, I mean, Mr. Barnes should still have the right to challenge it. But I would say that's still not as damaging as having to cross-examine a witness that you don't want that's allegedly put forth on your own behalf. I mean, this is certainly a tricky situation, but when we're dealing with capital punishment, I mean, that's how we're, if this was like a straight robbery case or a grand theft case, it would be easier because we wouldn't be dealing with advisory potential, like in other cases we're dealing with advisory jury. Here's no jury, but when we're dealing with Eighth Amendment principles and possibly being sentenced to death, it's obviously a much harder evaluation to conduct. But the gentleman still has Sixth Amendment right to represent himself, and until Ferret is overturned, until McCaskill v. Wiggins is overturned, if they ever are, they still have the right to conduct their case in their own way. But getting back to what Judge Breyer said earlier, which is the standard is so high, we're not reviewing this to no vote to see if we agree with the interpretation of Ferretta that the State Court did. Under DEPA, it is, we've said in Wright v. Secretary of Florida, Department of Correction, that the State Supreme Court's ruling had to have been an error that was so well understood there's no possibility for fair-minded agreement. The fact we've had this exchange for a while would seem to me to suggest there's no way we could say that the Florida committed that kind of clear error. Would you agree? Not quite, Your Honor, because whenever we're arguing cases at this level and when this Court takes the time to listen to oral argument and come up with a well-reasoned decision, there's going to be give and take. There's going to be back and forth, and there's going to be good, fair-minded discussion. That's why a COA was granted, I would submit. So I would say that it's just because we're debating this issue and there's no clear, clear-cut guidance, I would still say that this Court can still make a decision on behalf of protecting Mr. Barnes' Sixth Amendment right to self-representation. Okay. Mr. Shakur, you've saved 10 minutes for rebuttal. We'll hear from Mr. Freeland. Thank you, Your Honor. May it please the Court. Timothy Freeland here on behalf of the State of Florida. This case illustrates the fundamental tension between the decision of Feretta under the Sixth Amendment and the requirements that the U.S. Supreme Court has elicited under the Eighth Amendment through the decisions of Lockett and Eddings and that family of cases. The position that the defendant takes here appears to suggest that he has the right, the authority under Feretta to prevent the trial court from considering mitigating evidence, available mitigating evidence that under the Eighth Amendment must be considered by the trial court. We really have two grounds here. We look at the federal law. I don't – the federal law does not say anything about who may present this type of mitigating evidence. If, for example, in this case, the state attorney had stood up and said, we have the following mitigating evidence to present, I don't see that any U.S. Supreme Court decision would prevent the state from presenting mitigating evidence. The trial court in this case saw that there was a need to present, to investigate mitigating evidence and appointed independent counsel to do that. What if the court had appointed a court officer, like a probation and pretrial officer, to do that work? I don't see a Sixth Amendment violation in any circumstance. Is that something that happens in Florida? It does. Yeah. We have – So had counsel not been appointed, would that have happened here? Would there have been some kind of court officer prepare a PSI? Yes, it's required under Florida law in every capital case. But is there a reason to think that that kind of report would not have yielded the kind of information or as rich a body of information as counsel was able to yield? I think if we look at what actually happened here, there's no reason to think that a PSI could not have produced as much or the same mitigating evidence. That would be a very case-by-case – I mean, you'd have to look at that case-by-case. Yes, right. How much a PSI showed and how much actually having an investigator go out and look would show. In this case, I think that we're looking at what ifs. Yeah. There was a PSI that was presented to the court. The court did have the advantage of a prior PSI from previous events. Yeah. In this case, we have actual counsel who conducted – Do you know why the court, though, felt that it needed the counsel to do that work? I think – well, we're looking at state law now because the Florida Supreme Court in Mahoma – What I'm mainly interested in is does the record tell us why the trial court felt that it really needed counsel to do that and the PSI wouldn't necessarily be enough? Well, if we look at what the Florida Supreme Court said in its decision, it said that the trial court had the advantage of a previous report from this same mental health expert, Dr. Rebsang. That tipped off the court. I think we can reasonably interpret that there was available mitigation out there that the defendant was not willing to present. And under Florida law, in those circumstances, since we have to have a PSI anyway, the Florida Rules of Criminal Procedure, I think it's 3.710, places it within the trial court's discretion to appoint independent counsel to investigate whether additional mitigation exists, and that's what happened here. So we're really considering whether this application of state law is a violation of federal law, and I don't see how it possibly could be. If we look at the, Judge Parnes, as you pointed out, if we look at the sentencing order, we could see a wealth of mitigating evidence that was relied upon by the trial court in imposing this death sentence that would not have been available to the trial court if the defendant had had his druthers. The only information that the defendant wanted to put on was the fact that he had pled, which was, as the Florida Supreme Court said, really did not amount to any kind of mitigation whatsoever. But it's the Florida Supreme Court characterized it as no mitigation evidence or testimony. Correct. That is how it characterized it. And I read, Judge Martin, I read your concurring opinion in Moody. I think these are hard cases. It is. It's, you know, how can we say that one constitutional right, the Sixth Amendment, is more valuable than another constitutional right, the Eighth Amendment? Since when does the Sixth Amendment trump the Eighth Amendment? Since when can a defendant use the Sixth Amendment to prevent the trial court from conducting an individualized sentencing proceeding like the Supreme Court has said that it must do? I just have a hard time accepting that. I'm aware that this Court has looked at the Davis decision. It's, of course, not controlling. And, frankly, I think that it was wrongly decided. I think that Judge Dennis's dissent there was exactly right. We have to allow the trial court some discretion to consider mitigation, even under the circumstances where a defendant objects and prefers not to, even under those circumstances. That's really the extent of my argument. I have no other argument. If the Court has any questions, thank you. Thank you, Mr. Freeland. Mr. Shakur, you have ten minutes. Thank you. The defendant's individual rights should still control these matters. You know, when we're talking about Eighth Amendment principles, when a defendant has a lawyer, we're talking about protecting that individual's rights to the extent that that individual is competent to proceed and competent to make decisions. But we have Sixth Amendment rights. We have Feretta v. California. We have McCaskill v. Wiggins and progeny. And here an individual was found competent to proceed and competent to represent himself. So if he was given his full rights and he decided to rely, and this is mitigation, the fact that he's helping the state solve a cold case with horrible facts, but he helped the state solve that case, and he decided that he wanted to save the state resources and investigation, put a family's heart at rest as far as what happened to their loved one, express remorse based on his conversion to a Muslim faith, that's his right to rely on that. And I think it would set a dangerous precedent if we start taking away these individual rights of competent individuals. You know, if Mr. Barnes was not found competent, we'd be arguing a different issue here. You know, if this was a rash decision by the court to let him represent himself, like we've seen in other cases, I'd be arguing a different decision if it reached this level. But every step of the way, the court made a reasoned inquiry of Mr. Barnes to make sure he was competent to proceed to make these decisions. So since he was, and since he has a Sixth Amendment right, it would be upholding FRERETA by allowing him to have this case reversed, sent back to the trial level for a new penalty proceeding. And at that point, if Mr. Barnes decides, I want to just rely on my confession and that's it for the reasons I just mentioned, then the court should take that into account and use that in that own. But to the extent the court's allowed to order PSI, which is based on Florida law, okay, that's one option for this court. The court can still order PSI. But to allow a court to appoint special counsel against the language in FRERETA, force counsel on the defendant that counsel never acquiesced to, and to allow special counsel to control the manner and content of the information, contrary to McCaskill v. Wiggins, this is a violation of Mr. Barnes' Sixth Amendment rights. You know, it's not an easy task at all, but his Sixth Amendment rights were explicitly violated once this lawyer was appointed to conduct this research and this investigation and present this testimony that Mr. Barnes objected to. He had to cross-examine his own so-called mitigation witness. I mean, that's probably unheard of. I didn't find it in any of my study. I don't know if this court's seen it, but it's such a dangerous precedent. What happens if there's a jury next time? What happens if next time, okay, the district court ruling is upheld, now the Eleventh Circuit has issued Barnes v. Secretary, Department of Corrections for Florida, and now it's okay for the court in the future to appoint special counsel against the wishes of competent defendants who want to proceed pro se, and then we have a person in front of a jury making cross-examinations of so-called witnesses. I mean, I would simply make a mockery of the court, you know, and I'm asking this court to reverse, allow Mr. Barnes to decide whether or not he wants a penalty phase proceeding, now that we're in a post Hurst v. Florida and Hurst v. State world, or if he doesn't, and he likely won't based on his history, allow Mr. Barnes to present his confession to the court for the court's determination. And if the court were to order a PSI and that were to create another issue for litigation, that's part of capital jurisprudence. I mean, whenever there's a capital conviction and a sentence of death, there's going to be litigation. But we have to deal with the facts at hand in this particular case. And in this particular case, I think it's clear, based on the cases that I cited, particularly for Redder v. California and McCaskill v. Wiggins, that Mr. Barnes' Sixth Amendment rights were clearly violated. And I'm just respectfully asking this court to reverse. Mr. Shakur, I know you were court appointed, and we appreciate you accepting the appointment and appearing and arguing before us today. Thank you for your time. Thank you. We are adjourned for today.